IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| TAMMY C. WHEELER, ) | |
| ) | Case No. 4:10CV00040 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WISEMAN ENTERPRISES, INC., ) | |
| ) | By: Jackson L. Kiser |
| Defendant. ) | Senior United States District Judge |

Before me is Defendant's Motion to Dismiss [ECF No. 4] pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff filed her brief in opposition [ECF No. 12], Defendant replied [ECF No. 13] and I heard oral argument and evidence at an April 7, 2011 hearing. The matter is now ripe for review. I have analyzed the relevant briefs, affidavits, interrogatories, depositions and testimony. For the following reasons, Defendant's Motion to Dismiss is **DENIED**.

**I.      Facts and Procedural History**

Plaintiff is a North Carolina resident and, on August 31, 2004 was an employee of Trader Publishing Company, a division of Dominion Enterprises, Inc., which is a Virginia corporation headquartered in Norfolk, VA.[1] Complaint ¶ 1; Def.'s Br. Mot. Dismiss, 1. Defendant, Wiseman Enterprises, Inc., d/b/a Danville Toyota, is a Virginia corporation with its principal place of business in Danville, VA. Complaint ¶ 2.

Plaintiff, pursuant to her employment with Trader Publishing Company, was required to photograph vehicles on Defendant's car lot in Danville. Complaint ¶ 7. Defendant hired Trader Publishing as an independent contractor to perform certain marketing services. Pl.'s Br. Opp. Mot.

---

[1]     This is the description given in Plaintiff's Complaint. In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff states that Trader Publishing Company appears to have been "a fictitious name utilized by a Delaware Corporation, Cox Auto Trader, Inc., with its principal place of business in Atlanta, Georgia." Pl.'s Br. Opp. Mot. Dismiss., 1.

1

Dismiss, 2. Defendant states that Plaintiff's work was an ongoing project which required her to be on Defendant's premises at least once per week. Def.'s Br. Mot. Dismiss, 2. While taking pictures on August 31, 2005, Plaintiff was injured when she stepped into drainpipe hole in the ground, which was allegedly covered with grass and "not visible in the exercise of reasonable care . . . ." Complaint ¶ 7. Plaintiff asserts that the accident has left her unable to work and permanently disabled. *Id.* ¶ 9. Prior to the commencement of this suit, Plaintiff applied for and received workers' compensation benefits under the North Carolina Workers' Compensation Act. Pl.'s Br. Opp. Mot. Dismiss, 2.

Plaintiff originally filed this suit in Virginia Circuit Court in Danville, VA, "on or about March 12, 2007." *Id.* at 4. Discovery in the state suit lasted nearly three years and, in early 2010, Defendant filed a Plea in Bar. *Id.* Defendant argued, "for the first time . . . that the state court lacked subject matter jurisdiction in the matter, claiming that the plaintiff's exclusive remedy for her injuries was under workers' compensation statutes." *Id.* This issue had not been part of discovery to that point. *Id.* Plaintiff and Defendant moved for a continuance but the court denied the joint request. *Id.* at 5. "Accordingly, the plaintiff was forced to take a voluntary nonsuit on April 1, 2010, and no further discovery was undertaken relating to the Plea in Bar issue." *Id.*

Plaintiff filed her Complaint in this Court on September 16, 2010, asserting a premises-liability theory of negligence against Defendant. Complaint ¶ 9. Jurisdiction is diversity-based under 28 U.S.C. § 1332.[2] Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on November 19, 2010, arguing that "the court in this action lacks subject matter jurisdiction based on the fact that Plaintiff's exclusive remedy lies within the Virginia Workers' Compensation Act" ("VWCA"). Def.'s Br. Mot. Dismiss, 4.

**II.     Standard of Review**

---

[2]     Plaintiff's Virginia-based employer is not a party to this suit. Therefore, diversity is complete. Plaintiff claims $750,000.00 in damages. Complaint, "WHEREFORE" Clause.

> Because the defendant is attacking the court's subject matter jurisdiction based on the exclusivity provision of the VWCA, the appropriate motion is a motion to dismiss under Fed.R.Civ.P. 12(b)(1), and not a motion for summary judgement. *See Peavler v. Mitchell & Scott Mach. Co., Inc.,* 638 N.E.2d 879, 880 (Ind.Ct.App.1994). "A motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning a court's power to act." *Id.* The plaintiff has the burden of proving that subject matter jurisdiction exists, and when a defendant challenges subject matter jurisdiction "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgement." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991).

*Nelson v. U.S. Postal Service*, 189 F.Supp.2d 450, 454 (W.D. Va. 2002).

### III.  Summary of Arguments

Defendant first asserts that Virginia law governs the issues in this case because "the law of the place of the wrong is determinative of the substantive rights of the parties." Def.'s Br. Mot. Dismiss, 4 (citing *Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 396, 634 S.E.2d 324, 327 (2006)). Next, Defendant argues that the VWCA applies in this case, despite the fact that Plaintiff currently receives workers' compensation in North Carolina. Def.'s Br. Mot. Dismiss, 4–5; Pl.'s Br. Opp. Mot. Dismiss, 2. As such, Defendant concludes, the VWCA's exclusivity provision bars Plaintiff's claim against Danville Toyota. Def's Br. Mot. Dismiss, 5.

Plaintiff spends much of her brief asserting that Defendants' Motion to Dismiss is improper at this stage of the proceedings. Pl.'s Br. Opp. Mot. Dismiss, 3. Plaintiff argues that Fed. R. Civ. P. 12(d) precludes introducing matters outside of the pleadings "in connection with defenses presented pursuant to Rule 12 of the Federal Rules of Civil Procedure." *Id.* Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Because Rule 12(d) does not refer to Motions made pursuant to Rule 12(b)(1), Plaintiff contends, "the defendant's attachment of matters outside the pleadings is inappropriate to its

Motion and should be stricken. Even if requested, the Motion could not be treated at this stage as a Motion for Summary Judgment under Rule 56." Pl.'s Br. Opp. Mot. Dismiss, 4. Defendant attached various affidavits and deposition transcripts to its Motion to Dismiss. Def.'s Br. Mot. Dismiss, attach. 1–5. Therefore, "[p]ursuant to Rule 56(d), the plaintiff moves this Court to defer consideration of the defendant's Motion, or deny it, in order to allow the plaintiff to take discovery and present evidence on the issue presented." Pl.'s Br. Opp. Mot. Dismiss, 4.

Further, Plaintiff argues that, "assuming arguendo that it would be appropriate for the Court at this time to consider the arguments of the defendant," the Motion to Dismiss should be construed as a Motion for Summary Judgment pursuant to the aforementioned language in Fed. R. Civ. P. 12(d). *Id.* at 5. Plaintiff asserts that Defendant is not entitled to summary judgment because Plaintiff is not barred by the exclusivity provision in the VWCA. *Id.* at 5–9.

IV. **Analysis**

A. **Initial Matters**

As an preliminary observation, Plaintiff's contentions that this is an inappropriate time to hear Defendants' 12(b)(1) Motion, that evidence outside of the pleadings should not be considered, and that, in the alternative, the Motion should be reconstrued under Rule 56, all must fail. As stated earlier, challenges to a court's subject matter jurisdiction based on the exclusivity provisions of the VWCA are appropriate under Rule 12(b)(1). *Nelson v. U.S. Postal Service*, 189 F.Supp.2d 450, 454 (W.D. Va. 2002) (citing *Peavler v. Mitchell & Scott Mach. Co., Inc.,* 638 N.E.2d 879, 880 (Ind.Ct.App.1994). Further, the Fourth Circuit has held that when a Defendant challenges a court's subject matter jurisdiction, the court may hear evidence outside the pleadings without turning the motion into a Rule 56 proceeding. *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). Plaintiff's

reliance on Rule 12(d) is simply misplaced and her arguments are contrary to the clear precedent of this district and the Fourth Circuit.[3]

Defendants' assertion that both Virginia law and the VWCA apply to this case are correct. Indeed, the *lex loci delicti* standard has long been the rule in Virginia regarding torts and the Virginia Supreme Court has declined the invitation to adopt other rules. *Jones v. R.S. Jones and Associates, Inc.*, 246 Va. 3, 431 S.E.2d 33 (1993). The Virginia Supreme Court has also stated that "the law of the State of the accident controls the *remedy sought* in that particular forum." *Garcia v. Pittsylvania County Service Authority*, 845 F.2d 465, 467 (1988) (emphasis added). In *Garcia*, the Fourth Circuit considered an appeal from this Court. Plaintiffs were North Carolina residents, employed by a North Carolina construction company, and were injured in a Pittsylvania Co. explosion in the course of their employment. *Garcia*, 845 F.2d at 466. Plaintiffs received compensation through the North Carolina Workers' Compensation Act and filed suit for their injuries in the Western District of Virginia. *Id.* Defendants moved to dismiss the complaint "on the grounds, inter alia, that plaintiffs' actions were barred by the exclusive remedy provision of the Virginia Workers' Compensation Act . . . ," which this Court granted. *Id.* In affirming that decision, Judge Widener wrote:

> We are thus of opinion that the law of Virginia controls for this accident which occurred in Virginia and was occasioned by the negligence of an independent contractor with the [Defendant] who was doing work in Virginia and required by Virginia law to have workers' compensation insurance.

*Id.* at 467. Based on precedent, then, Virginia law and the VWCA are both applicable to this case. It is, therefore, Plaintiff's burden to prove that the VWCA's exclusivity provision does not preclude this court's subject matter jurisdiction. *Nelson*, 189 F.Supp.2d at 454.

---

[3] In its reply brief, Defendant argues that because Plaintiff's response does not technically address Defendant's 12(b)(1) argument, "the case should be summarily dismissed." Def.'s Re. Br. Mot. Dismiss, 1. Plaintiff does, however, address the pertinent issues, but frames them as a response to a Rule 56 motion based on Plaintiff's mistaken assumption that Rule 56 would apply. Pl.'s Br. Opp. Mot. Dismiss, 5–9. Because Plaintiff effectually addresses the merits of Defendant's 12(b)(1) motion, Defendant's argument that the case be "summarily dismissed" is itself denied.

B.  **Statutory Employer Doctrine**

1.  **The Virginia Code and Common Law[4]**

The VWCA bars actions against both an employee's "direct" employer and "statutory" employer, providing that an injured employee's exclusive remedy lies within the Act. Va. Code § 65.2-307. The exclusivity provision reads:

> The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parent, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death.

*Id.* The Act describes a "statutory" employer, in relevant part, as follows:

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Va. Code § 65.2-302. "This 'statutory employer' provision is designed to ensure that owners do not escape liability for workers' compensation benefits by having their work performed by others." *Jones v. Commonwealth*, 267 Va. 218, 221, 591 S.E.2d 72, 74 (2004) (citing *Henderson v. Central Tel. Co.*, 233 Va. 377, 381, 355 S.E.2d 596, 598–99 (1987); *Smith v. Horn*, 232 Va. 302, 305–06, 351 S.E.2d 14, 16 (1986)).

As the Eastern District of Virginia explained:

---

[4]  There is a line of statutory employer cases from the Virginia Supreme Court concerning whether the employee of a company (typically a wholesaler) delivering goods to a purchaser (typically a retailer) was the statutory employee of the purchaser during the delivery. *See Burch v. Hechinger Co.*, 264 Va. 165, 563 S.E.2d 745 (2002), *Bosley v. Shepherd*, 262 Va. 641, 554 S.E.2d 77 (2001), *Shell Oil Co. v. Leftwich*, 212 Va. 715, 187 S.E.2d 162, (1972), *Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107 (1969), *Bosher v. Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966), *Yancey v. JTE Constructors, Inc.*, 252 Va. 42, 471 S.E.2d 473 (1996). Aside from providing or affirming the relevant legal standards, these cases are not sufficiently analogous on the facts compared with the case at bar to guide the Court's consideration.

> [W]here an independent contractor is performing work which is a part of the
> trade, business or occupation of the owner, the employees of the independent
> contractor are statutory employees of the owner, and as such limited to the
> benefits and compensation under the Act, and precluded from instituting or
> maintaining a suit at common law against the owner.

*Snowden v. Virginia Elec. & Power Co.*, 432 F.Supp. 266, 268 (E.D. Va. 1976). "This is so even where employee's employer carried Workmen's Compensation for his employees, and thus made it unnecessary for the employee to look at the owner for said benefits." *Id.* (citing *Sykes v. Stone & Webster Engineering Co.*, 186 Va. 116, 41 S.E.2d 469 (1947)).

"The issue whether a particular person or entity is the statutory employer of an injured employee is a jurisdictional matter presenting a mixed question of law and fact that must be determined under the facts of each case." *Bosley v. Shepherd*, 262 Va. 641, 648, 554 S.E.2d 77, 81 (2001). In reaching a decision, courts must determine whether Plaintiff was engaged in the "trade, business or occupation" of Defendant at the time of the injury. *Id.* (citing *Yancey v. JTE Constructors, Inc.*, 252 Va. 42, 44, 471 S.E.2d 473, 474 (1996); *Sykes v. Stone & Webster Eng'g Corp.*, 186 Va. 116, 121–22, 41 S.E.2d 469, 472 (1947)). "Although such a question is not subject to categorical or absolute standards, this Court has approved repeatedly the test quoted and applied by this Court in *Shell Oil Co. v. Leftwich*, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972)" (citations omitted). In *Shell Oil*, the Virginia Supreme Court quoted and adopted the following statutory employee test from Professor Arthur Larson:[5]

> '[T]he test is not one of whether the subcontractor's activity is useful,
> necessary, or even absolutely indispensable to the statutory employer's
> business, since, after all, this could be said of practically any repair,
> construction or transportation service. The test (except in cases where the
> work is obviously a subcontracted fraction of a main contract) is whether this
> indispensable activity is, in that business, normally carried on through
> employees rather than independent contractors.'

---

[5] Professor Larson taught at the University of Tennessee law School, Cornell Law School, Duke Law School and served as Dean of the University of Pittsburg School of Law. Larson also served as Under Secretary of Labor, top speech writer, and Director of the United States Information Agency in the Eisenhower Administration. *"Arthur Larson,"* WIKIPEDIA, http://en.wikipedia.org/wiki/Arthur_Larson (last visited March 21, 2011).

7

*Shell Oil*, 212 Va. at 722, 187 S.E.2d at 167 (citing ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION, VOL. 1A, § 49.12, pp. 872–73 (1982)).

Defendant cites *Carmody v. F.W. Woolworth Company*, 234 Va. 198, 361 S.E.2d 128 (1987) in support of its argument that Plaintiff was Danville Toyota's statutory employee at the time she was injured. There, Defendant Woolworth Company ("Woolworth") entered into a license agreement with Photo Corporation of America ("PCA") "for the taking and sale of portrait photographs at Woolworth's stores." *Id.* at 202, 130. Woolworth received 10% of PCA's sales made inside Woolworth's stores. *Id.* PCA was not permanently set up in Woolworth's; rather, both parties mutually agreed on certain dates and Woolworth would provide an area in the store for PCA to operate. *Id.* Woolworth also provided PCA with "any fixtures, equipment, or signs needed to promote the venture," as well as a cash register, janitorial service, security and utilities. *Id.* Woolworth "expressly reserved to itself authority over sales, refunds, exchanges, and extensions of credit." *Id.* Finally, [t]he license agreement required PCA to . . . save Woolworth harmless from any liability arising out of the operation of the department." *Id.* These and various other contractual provisions had the effect of giving Woolworth extensive control over PCA's operations while on Defendant's premises. *Id.*

Plaintiff Carmody "was employed by PCA as a traveling photographer." *Id.* Plaintiff was injured at Defendant's Manassas store "when he slipped on a dolly, fell to the floor, and sustained back injuries which proved to be permanent and disabling." *Id.* at 203, 131. "Employees of [Defendant] had used the dolly that morning to reposition display tables in order to provide adequate space for the heavy flow of Woolworth customers expected to buy portraits that day." *Id.* Plaintiff argued that Defendant was not his statutory employer because "Woolworth had never been engaged in the portrait business . . . ." *Id.* The Virginia Supreme Court disagreed:

> Carmody's argument, however, misses the mark. The appropriate inquiry is not whether Woolworth as owner was engaged in the portrait photography business or had ever been, but whether Carmody's sale of portrait photographs was a part of Woolworth's business of operating a department

8

> store . . . . [A]s a discount department store selling a variety of goods and services, Woolworth saw a consumer demand for portrait photographs and, as a matter of commercial self-interest, elected to make it a part of its retail merchandising business, albeit a part conducted through an independent contractor.

*Id.* at 205, 132.

Also on point, though not directly, is *Cooke v. Skyline Swannanoa, Inc.*, 226 Va. 154, 307 S.E.2d 246 (1983). There, Plaintiff was the direct employee of Aberdeen Barn-Afton, Inc. ("Aberdeen"), a restaurant at the Holiday Inn on Afton Mountain in Nelson County, VA. *Id.* at 156, 247. Defendant Skyline Swannanoa, Inc. ("Skyline") operated the hotel and, as a Holiday Inn Licensee, was contractually charged "to provide the Holiday Inn system of food and lodging." *Id.* at 157, 248. Skyline leased the hotel's restaurant area to Aberdeen. *Id.* That lease required Lessee "to comply fully with the rules, regulations and requirements of the Holiday Inn International System Rules of Operations as in force from time to time." *Id.* Holiday Inn personnel had the right to inspect Aberdeen and Aberdeen was bound by parts of the license agreement between Skyline and Holiday Inn. In short, "Skyline was in the business of running a Holiday Inn and [Plaintiff] merely agreed to perform part of Skyline's responsibilities." *Id.* Thus, when Plaintiff was injured on the premises of the restaurant, she was the statutory employee of Skyline and could not pursue a tort claim against Skyline due to the exclusivity provision in the VWCA. *Id.* at 159, 249. Plaintiff attempted to argue that operating a restaurant was not something Defendant "normally carried on through employees," as the *Shell Oil* test requires. *Id.* at 158, 249. While acknowledging that Defendant's employees had never operated the restaurant, the Court noted that the portion of the *Shell Oil* test that Plaintiff cited does not apply "in cases where the work is obviously a subcontracted fraction of a main contract." *Id.* at 158, 248–49 (citing ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION, VOL. 1A, § 49.12 at 9-53 (1982)).

In *Bassett Furniture Industries, Inc. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976), Plaintiff was an employee of Industrial Air, Inc. ("Industrial"), which was installing a conveyor system in the

9

Virginia plant of Bassett Furniture Industries, Inc. ("Bassett"). *Id.* at 898, 324. Plaintiff was injured when he fell through a hole in the floor cut to accommodate the conveyor system. *Id.* One issue on appeal was whether Plaintiff was a statutory employee of Bassett. Basset argued that, "when an owner acts as its own general contractor and contracts, in whole or in part, with subcontractors" for construction work—"the kind of work which employees of the owner-general contractor usually do"—then the owner-general contractor becomes a statutory employer. *Id.* at 900, 325. The Court rejected Basset's argument, reasoning:

> Bassett was a manufacturer of furniture. It maintained no separate construction division. Only a negligible fraction of its 7000 employees was trained in construction skills. Carpenters and similar craftsmen were assigned to maintenance crews. Depending upon their "availability" and "what other jobs they were doing," they were sometimes used to construct all or part of minor projects and sometimes "to make modifications to tie in with" major projects . . . . Bassett had the capacity to build new conveyors, but "on a job of this size, it would always be contracted out," and "Basset had never undertaken anything of this magnitude . . . ." We hold that the evidence was sufficient to support the trial court's [decision to] overrule[] Basset's motion to dismiss.

*Id.* at 903–04, 327.

### 2. Plaintiff's and Defendant's Relationship

In the present matter, Plaintiff described Trader Publishing "as independent contractors working for automobile dealerships nationwide." Pl.'s Br. Opp. Mot. Dismiss, 2. In her Response to Defendant's Motion to Dismiss, Plaintiff described her employer's relationship with Danville Toyota as follows:

> [Trader Publishing] provided services which involved researching and obtaining data and information relating to particular used cars which were to be offered for sale by the car dealerships, preparation of stickers for placement on the used cars, including a sticker which listed the features of the vehicle and a sticker known as a federal buyer's guide providing information relating to warranties on the vehicle, and the taking of photographs of the vehicle which would then be uploaded and displayed on websites owned by the employer. At times, for a fee, the photographs would be downloaded to other websites. All of the equipment utilized in providing this service, including laptops, computer servers, cameras, vehicles, etc., and all supplies utilized in performing the service, including the referenced stickers, were the property of and supplied by the plaintiff's employer, and not the car

> dealerships. Further, the methods utilized in performing the services was controlled by the plaintiff's employer, and not by the car dealerships.

*Id.* (citing Affidavit of Tammy C. Wheeler). *See also*, Def.'s Br. Mot. Dismiss, ex. 2 (providing Plaintiff's deposition transcript with her recitation of her job duties). Defendant posits that "Plaintiff was performing the dealership's work of photographing vehicles and replacing temporary, handwritten buyer's guides applied by the dealership employees with computer-generated, more attractive and secure buyer's guides and posting the car facts that twenty-first century consumers demand." Def.'s Br. Mot. Dismiss, 2. Defendant stresses that "Plaintiff's activities were thus an essential function and an integral part of marketing and selling the vehicles to the public—the trade, occupation and business of Danville Toyota." *Id.* at 8.

Plaintiff, attempting to distinguish *Carmody*, states, "even if the activities of the plaintiff's employer were indispensable to the business of Danville Toyota, this record does not establish that the activities engaged in by the plaintiff were normally carried on through employees rather than independent contractors . . . ." Pl.'s Br. Opp. Mot. Dismiss, 7. Further, Plaintiff notes, Trader Publishing supplied all the necessary equipment, controlled the "means and methods" of its employee's work, and "produced and placed" the generated content on the vehicles' windows. *Id.* "The plaintiff's employer also owned and controlled the photographs and the dispensing thereof for a fee." *Id.* Consequently, Plaintiff argues, her activity on Danville Toyota's premises "was not activity that was normally carried on through employees of Danville Toyota, and thus was not part of the defendant's trade business or occupation." *Id.* at 8.

### C. Application

This is a close case. Plaintiff's business operation was more independent from Danville Toyota than, for example, Aberdeen was from Holiday Inn in *Skyline*. Nor does Danville Toyota exercise the control over Plaintiff's conduct to the degree that Woolworth did over the Plaintiff in *Carmody*. Yet Plaintiff's work is more directly aligned with Danville Toyota's business of selling automobiles than, for

example, Industrial's construction work was with Basset's business of selling furniture. Plaintiff was also replacing handwritten buyer's guides that Danville Toyota's employees had themselves previously prepared with more professional versions. Def.'s Br. Mot. Dismiss, 2.

Whereas Danville Toyota is in the business of selling automobiles, Trader Publishing—and, therefore, Plaintiff—is in the business of providing car dealers with marketing services. Marketing and advertising are, doubtless, "useful, necessary, or even absolutely indispensable to the statutory employer's business," *Shell Oil*, 212 Va. at 722, but that is not the statutory employer test. *Id.* "The test . . . is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors." *Id.* The Virginia Worker's Compensation Commission ("VWC") itself has rejected the argument that an independent contractor providing advertising services thereby becomes the owner's statutory employee. *Spitzer v. Fried Company*, 1997 WL 273957 (Va.App. 1997) (affirming the VWC's decision) (Not Reported in S.E.2d). The VWC reasoned, "'[i]f we accept counsel's reasoning, then employees of a newspaper or other advertising medium utilized by [the owner] might be considered its statutory employees.'" *Id.* at *1 (quoting the VWC). A rule that would bring all independent contractors engaged in advertising into the VWCA's "statutory employee" rubric would expand the VWCA's application beyond its intended purpose of "ensur[ing] that owners do not escape liability for workers' compensation benefits by having their work performed by others." *Jones v. Commonwealth*, 267 Va. 218, 221, 591 S.E.2d 72, 74 (2004).

Of course, if the owner's employees also engaged in advertising during or prior to the independent contractor's marketing services, then the concern with over-expanding the VWCA's scope would dissipate. In other words, had Danville Toyota's employees normally engaged in advertising themselves, the VWCA would apply to Plaintiff's claim based on the *Shell Oil* test. To that point, Defendant forcefully argues that "[a]ll of Plaintiff's work activities were part of the business of the dealership and are tasks performed by other employees." Def.'s Br. Mot. Dismiss, 8. Defendant notes

that Danville Toyota initially applied their own federally required buyer's guides and informational stickers to the vehicles prior to Trader Publishing replacing them with more attractive versions. *Id.* at 7. Defendant also elicited testimony that Danville Toyota had its own camera and used it to post pictures of its vehicles to its own website, just as "Plaintiff took photographs of the vehicles for advertising" and listed them on the internet. *Id.* at 7, ex. 1. Because Danville Toyota also engaged in Plaintiff's two primary activities—applying labels to the car and taking pictures for internet postings—Defendant contends that *Shell Oil* requires this court to dismiss for lack of jurisdiction. *Id.* at 7.

Defendant mischaracterizes the nature of Danville Toyota's actions regarding the photographs and car labels. When Danville Toyota posts photographs on its own website, it is, abstractly, a form of advertising. But it is more akin to placing vehicles on the lot to show consumers the available inventory than it is a marketing activity involving active promotion through third-party media or internet sales outlets. If the mere step of presenting available inventory constitutes advertising, then every dealer of consumer goods would fall under the *Shell Oil* test as having employees engaged in advertising—resulting in the same, unacceptable conclusion that all advertisers are statutory employees of the owner. Thus, when Trader Publishing took pictures of Defendant's cars and posted them on third-party websites such as "Cars.com, GetAuto.com, AutoTrader.com and Cobalt" (Exhibit List, ECF No. 21, Pl.'s ex. 1, p. 3), Trader Publishing did not engage in activities "normally carried on through employees rather than independent contractors." *Shell Oil*, 212 Va. 722. Indeed, Defendant's own General Manager testified that, in order to do the work that Trader Publishing performed, Danville Toyota would have needed to hire a new employee, further strengthening Plaintiff's argument that Danville Toyota's employees did not normally engage in Trader Publishing's type of work.

The same analysis applies to Trader Publishing's application of window labels. As Defendant itself states multiple times, the buyer's guide was federally mandated. Def.'s Br. Mot. Dismiss, 7, Def.'s Rep. Br. Mot. Dismiss, 4, Deposition of Tammy C. Wheeler ("Wheeler Dep."), 49. Complying with federal

law is not a form of advertising. Hiring a third party to make a federally required label more appealing to the consumer in order to promote sales, using procedures that Danville Toyota was incapable of replicating, is a different kind of action than standard legal compliance. Trader Publishing used "cutting edge technology" and "on-site specialists" to create "[w]indow labels that sell." Exhibit List, ECF No. 21, Pl.'s ex. 1, p. 3 (emphasis added). Plaintiff's uncontroverted testimony was that Trader Publishing uses printing technology that neither Danville Toyota, nor its other clients, possessed. Danville Toyota's employees were not capable of engaging in the same, specialized activity as Plaintiff. Trader Publishing's internet marketing services and its design and application of window labels does not bring it within the *Shell Oil* test simply because Danville Toyota's employees engaged in similar but distinct activities necessary to comply with the law and present its inventory. Viewing all relevant facets of Plaintiff's relationship with Danville Toyota in light of the *Shell Oil* test, it is the opinion of this Court that Defendant was not Plaintiff's statutory employer at the time of her injury.

**V.      Conclusion**

Danville Toyota was not Plaintiff's statutory employer as defined under the VWCA. As such, the VWCA's exclusivity clause does not preclude this Court's jurisdiction. Consequently, Defendant's Motion to Dismiss is **DENIED.**

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying order to all counsel of record.

Entered this 15th day of April, 2011.

s/Jackson L. Kiser<br>Senior United States District Judge